IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION



FILED IN CHAMBERS
U.S.D.C. Atlanta

MAR 31 2011

JAMES N. HATTEN, Clerk
By: / Deputy Clerk

| | |
|---|---|
| LAWRENCE R. SCHMIDT and LR SCHMIDT ASSOCIATES, <br><br> Plaintiffs, <br><br> v. <br><br> JPS INDUSTRIES, INC. and JPS ELASTOMERICS CORP., <br><br> Defendants. | CIVIL ACTION NO. <br><br> 1:09-CV-3584-JEC |

### ORDER & OPINION

This case is presently before the Court on defendants' Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue [2]. The Court has reviewed the record and the arguments of the parties and, for the reasons set out below, concludes that defendants' Motion to Dismiss [2] should be **GRANTED**.

### BACKGROUND

This case involves a payment dispute arising from expert and consultancy services provided by plaintiffs in prior litigation. (Compl. [1].) In 2007, third party Specialized Technology Resources, Inc. ("Specialized") sued defendants in Massachusetts state court for misappropriation of trade secrets. (Id. at ¶ 6.)  Defendants hired

Jones Day as counsel in the Massachusetts action.[1] (*Id.* at ¶ 7.) Gidon D. Stern, a lawyer from Jones Day's New York office, contacted plaintiffs about providing expert services in the Massachusetts litigation. (Schmidt Decl. [5] at ¶ 6.) Shortly thereafter, plaintiff Lawrence Schmidt participated in a conference call concerning the litigation with two lawyers in Jones Day's Atlanta office, along with another lawyer from Jones Day's New York office. (*Id.*)

In December, 2007, plaintiffs entered into a Retainer Agreement (the "Agreement") with Jones Day. (Compl. [1] at ¶¶ 10-11 and Agreement, attached as Ex. A.) The Agreement requires plaintiffs to provide expert and consultancy services in the Massachusetts litigation for the benefit of defendants, but does not name either defendant as a party. (Agreement at 1.) In its payment provisions, the Agreement establishes a process whereby plaintiffs would submit invoices to Jones Day's Atlanta office for approval, after which the invoices would be forwarded to defendants for payment. (Compl. [1] at ¶¶ 15-16 and Agreement at ¶¶ 2-3.)

During the course of the Massachusetts litigation, plaintiffs submitted several invoices to Jones Day, which in turn forwarded the invoices to defendants. (Compl. [1] at ¶¶ 19, 22-23.) Defendants remitted partial payment, but failed to satisfy the invoices in full.

---

[1] Jones Day is an international law firm that maintains offices in multiple cities in the United States, including Atlanta, Georgia. (Fulbright Aff. [2] at ¶ 7.)

2

(*Id.* at ¶¶ 24-25, 31.) In spite of numerous attempts by plaintiffs to collect payment from defendants and from Jones Day, defendants have yet to pay the total amount billed. (Schmidt Decl. [5] at ¶¶ 28-30 and Ex. 2.)

Plaintiffs ultimately filed suit against defendants in Fulton County Superior Court for payment on the invoices. (Compl. [1] at ¶ 17 and Agreement at ¶ 2.) Defendants removed the action to this Court on the grounds of diversity, and filed a motion to dismiss for lack of personal jurisdiction and improper venue. (Defs.' Mot. to Dismiss [2].) Defendants are not residents of Georgia. (Notice of Removal [1] at ¶ 3.) They are Delaware corporations with their principle place of business in South Carolina. (*Id.*) In support of their motion to dismiss, defendants argue that they lack sufficient contacts with the state of Georgia to subject them to personal jurisdiction here. (Defs.' Mot. to Dismiss [2].)

## DISCUSSION

### I. Applicable Standard

In order for the Court to exercise personal jurisdiction over defendants, plaintiffs must demonstrate that jurisdiction (1) is appropriate under the Georgia long-arm statute and (2) comports with the due process requirements of the constitution. *Madara v. Hall*, 916 F.2d 1510, 1514 (11th Cir. 1990). When a defendant presents evidence sufficient to challenge jurisdiction on either ground, "the burden . . . shifts back to the plaintiff to produce evidence

supporting jurisdiction." *Meier ex rel. Meier v. Sun Int'l Hotels, Ltd.*, 288 F.3d 1264, 1268-69 (11th Cir. 2002). In examining the evidence presented by the parties, the Court must draw all reasonable inferences and construe any conflicts in favor of plaintiffs. *Morris v. SSE, Inc.*, 843 F.2d 489, 492 (11th Cir. 1988).

## II. The Georgia Long-Arm Statute

The Georgia long-arm statute allows courts in this state to exercise personal jurisdiction over any nonresident defendant in a cause of action that arises out of the defendant's "[t]ransact[ion of] any business within th[e] state." O.C.G.A. § 9-10-91(1). Because of the expansive language of the statute, courts in this circuit have in the past conflated the Georgia long-arm analysis with the constitutional due process inquiry. *See Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc.*, 593 F.3d 1249, 1258-63 (11th Cir. 2010). The Eleventh Circuit recently clarified that a separate inquiry is necessary, stating that:

> court[s] must apply the specific limitations and requirements of O.C.G.A. § 9-10-91 literally and must engage in a statutory examination that is independent of, and distinct from, the constitutional analysis to ensure that both, separate prongs of the jurisdictional inquiry are satisfied.

*Id.* at 1263.

Engaging in the inquiry required by *Diamond Crystal Brands*, the Court finds that Georgia's long-arm statute is satisfied in this case. Interpreted literally, the phrase "transacts any business"

4

requires that defendants have "purposefully done some act or consummated some transaction in [Georgia]." *Id.* at 1264 (citing *Aero Toy Store, LLC v. Grieves*, 279 Ga. App. 515, 517 (2006)). The statute expressly provides that the "act" or "transaction" at issue may be accomplished "in person or through an agent." O.C.G.A. § 9-10-91. Thus, a defendant need not physically enter the state to meet the requirements of the long-arm statute. *Diamond Crystal Brands*, 593 F.3d at 1264 (citing *Innovative Clinical & Consulting Servs., LLC v. First Nat'l Bank*, 279 Ga. 672, 675 (2005)). The only additional requirement is that the cause of action arise out of the act or transaction that occurred in Georgia. O.C.G.A. § 9-10-91.

Two of the attorneys who represented defendants in the Massachusetts litigation, including the lead counsel, are Georgia attorneys who work in Jones Day's Atlanta office. (Schmidt Decl. [5] at ¶¶ 7, 13.) Defendants hired those attorneys, who in turn secured plaintiff's services. (*Id.* at ¶¶ 13, 16 and Compl. [1] at ¶¶ 10-11.) The Agreement governing the provision of plaintiff's services required plaintiffs to submit invoices to Jones Day's Atlanta office for approval. (Compl. [1] at ¶¶ 19, 22-23.) The current litigation arises directly from plaintiff's provision of services, and failure to obtain payment, under the Agreement. (*Id.*) Thus, defendants' activities comply with the literal requirements of § 9-10-91. *See* O.C.G.A. § 9-10-91 and *Diamond Crystal Brands*, 593 F.3d at 1264.

5

### III. Constitutional Requirements

Nevertheless, the Court finds that it cannot exercise personal jurisdiction over defendants in this case. In addition to complying with the long-arm statute, plaintiffs must also show that the Court's exercise of personal jurisdiction over defendants comports with due process. *Diamond Crystal Brands,* 593 F.3d at 1267. Due process requires that (1) a nonresident defendant has certain minimum contacts with the forum state and (2) the exercise of jurisdiction does not offend "traditional notions of fair play and substantial justice." *Id.* Plaintiff has not presented evidence sufficient to meet the "minimum contacts" requirement. Moreover, exercising personal jurisdiction over defendants under the circumstances of this case raises significant issues concerning "fair play and substantial justice."

#### A. Minimum Contacts

To satisfy the minimum contacts analysis for the purpose of specific jurisdiction, plaintiffs must demonstrate that defendants "purposefully availed" themselves of the protection and laws of the State of Georgia, such that they "should reasonably anticipate being haled into court" here.[2] *Id.* At the heart of the inquiry is the notion of "fair warning." *Id.* The fair warning requirement is met

---

[2] There is affirmative evidence in the record that defendants lack the "continuous and systematic" contacts necessary to subject them to general jurisdiction in Georgia. (Fulbright Aff. [2] at ¶¶ 16-20.) *See Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 421 (1984).

6

when a nonresident defendant "deliberately engage[s] in significant activities within [the forum] state or create[s] continuing obligations with residents of the forum." *Id.* at 1268 (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 480 (1985)).

In asserting jurisdiction, plaintiffs rely solely on the fact that the attorneys who represented defendants in the Massachusetts litigation are from Georgia. (Pls.' Resp. to Defs.' Mot. to Dismiss [5].) The Court finds that this fact alone is insufficient to show that defendants deliberately engaged in significant activities in Georgia, or to provide fair warning that defendants might be "haled into court" in Georgia. *See Diamond Crystal Brands*, 593 F.3d at 1267-68 and *Burger King*, 471 U.S. at 475-80.

As an initial matter, the attorneys who represented defendants were affiliated with Jones Day, an international law firm with offices in multiple cities throughout the country. (Fulbright Aff. [2] at ¶ 7.) Although an attorney from Jones Day's Atlanta office ultimately assumed the role of lead counsel in the Massachusetts action, plaintiffs do not present any evidence to suggest that defendants initiated contact with or retained Jones Day via the Atlanta office. In fact, considering that plaintiffs were first contacted by an attorney in Jones Day's New York office, it is likely that defendants engaged Jones Day via its New York City office.

Even assuming that defendants initially contacted Jones Day's Atlanta office, the mere act of retaining a Georgia lawyer to handle

7

litigation in a different state is not the type of deliberate activity that is necessary to establish "minimum contacts" sufficient to subject a nonresident defendant to personal jurisdiction. *Diamond Crystal Brands*, 593 F.3d at 1267-68. Indeed, based on the evidence in the record, defendants' contacts with Georgia are exactly the type of "fortuitous" or "attenuated" contacts that do not satisfy due process. *Id.* The attorneys who represented defendants reside in Georgia, but there is no evidence that the Massachusetts litigation involved Georgia residents or Georgia law. Neither is there any evidence that defendants requested that their attorneys or plaintiffs provide any services in Georgia. In fact, it appears that all of plaintiffs' services, and most of the attorneys' services, were provided in New York or Massachusetts. (Compl. [1] at Ex. C and Monde Aff. [10] at 4-6.)

Contrary to plaintiffs' argument, the Agreement governing the provision of plaintiffs' services does not provide a basis for asserting jurisdiction over defendants. *See Diamond Crystal Brands*, 593 F.3d at 1268 ("entering a contract with a citizen of another state, standing alone, does not automatically satisfy the minimum contacts test"). Although the Agreement contains a Georgia choice of law provision, that fact is not determinative. *See Burger King*, 471 U.S. at 482 (a choice of law provision standing alone is not enough to warrant personal jurisdiction). As noted above, the Agreement primarily was performed in New York and Massachusetts. *Id.* More

8

importantly, defendants are not a party to the Agreement. (Agreement [1] at 1.) Plaintiffs cannot subject defendants to jurisdiction in Georgia by their unilateral decision to enter into a contract with Georgia attorneys for the provision of expert and consultancy services. *See Ruiz de Molina v. Merritt & Furman Ins. Agency, Inc.*, 207 F.3d 1351, 1356 (11th Cir. 2000)("unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum state").

The cases cited by plaintiffs do not compel a different result. Primarily, those cases stand for the proposition that the deliberate selection and retention of an attorney can under certain circumstances subject a nonresident defendant to suit in the attorney's home forum in an action for unpaid attorney's fees. *See Fischbarg v. Doucet*, 880 N.E.2d 22 (N.Y. 2007) and *Banker v. Esperanza Health Sys., Ltd.*, 201 Fed. Appx. 13, 15 (2nd Cir. 2006). Plaintiffs cite no case to support the significantly more expansive notion that a defendant can be subjected to personal jurisdiction in an attorney's home forum merely because the defendant hired the attorney to represent him in unrelated litigation in a different state.

Several Georgia and federal courts have indicated that due process is not satisfied on facts that are similar to this case. *See Hyatt v. Broyles, Dunstan & Dunstan, P.C.*, 198 Ga. App. 109, 111 (1990)(holding that the defendant did not establish minimum contacts

9

with Georgia by hiring a Georgia attorney for representation in a South Carolina matter) and *Amins v. Life Support Med. Equip. Corp.*, 373 F. Supp. 654, 658 (E.D.N.Y. 1974)(concluding that a Massachusetts corporation that retained a New York attorney to deal with patent matters in Washington, D.C. did not purposefully avail itself of the protection of the laws of New York).[3] The Court finds these cases persuasive, and adopts their reasoning. Accordingly, defendants' motion to dismiss for lack of personal jurisdiction should be **GRANTED**.

### B.   Fair Play and Substantial Justice

As a result of the above ruling, the Court need not examine whether its exercise of jurisdiction over defendants would "offend traditional notices of fair play and substantial justice." *Diamond Crystal Brands*, 593 F.3d at 1253. Nevertheless, the Court notes that the realities of complex modern litigation often entail significant contributions from multiple partners, each of whom might incorporate the use of an outside attorney or expert, in many different geographic locations. It is unlikely that the typical client would reasonably expect to be subject to suit in every location in which a

---

[3] The *Hyatt* decision collapses the due process analysis with its inquiry under the Georgia long-arm statute, in a manner that the Eleventh Circuit recently determined was improper. *See Hyatt*, 198 Ga. App. at 110-11 and *Diamond Crystal Brands*, 593 F.3d at 1263. However, the conclusion in Hyatt that the defendant did not establish minimum contacts with Georgia by hiring a Georgia attorney is relevant to the separate due process inquiry that the Court must undertake.

lawyer or expert worked on his case. Thus, the assertion of jurisdiction over defendants under the facts of this case raise significant concerns as to "fair play and substantial justice." *Id.*

## IV. Plaintiffs' Request for Discovery

In response to defendants' motion, plaintiffs request an opportunity to conduct discovery concerning defendants' contacts with Georgia. (Pl.'s Resp. [5].) However, there is sufficient evidence in the record to conclude that defendants lack the contacts required for personal jurisdiction in this case. Plaintiffs' specific jurisdiction argument is based solely on defendants' retention of Georgia attorneys to represent them in the Massachusetts litigation. (*Id.*) As discussed, that action is insufficient to satisfy due process as a matter of law. With regard to general jurisdiction, there is affirmative evidence in the record to negate that theory. (Fulbright Aff. [2] at ¶¶ 16-20.) Accordingly, plaintiffs' request for additional discovery is **DENIED**.

## CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendants' Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue [2]. The clerk is directed to **CLOSE** this case.

SO ORDERED, this 31 day of March, 2011.

JULIE E. CARNES
CHIEF UNITED STATES DISTRICT JUDGE

11